IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| PAULA CORNELL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN V. COLVIN, )<br>Acting Commissioner )<br>of Social Security, )<br>)<br>Defendant. ) | Case No. 3:14-cv-05059-NKL |

**ORDER**

Before the Court is Plaintiff Paula Cornell's appeal of the Commissioner of Social Security's final decision denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. [Doc. 8]. For the following reasons, the Commissioner's decision is reversed and remanded for further consideration consistent with this Order.

**I.    Background**

Plaintiff was born in June 1963 and has a high school education. Plaintiff alleges she became disabled on June 1, 2010, due to degenerative disc disease in her back, chronic obstructive pulmonary disease (COPD), bilateral shoulder pain with particular pain in her right shoulder, diverticulosis, bipolar disorder, anxiety, panic attacks, and depression. [Tr. 33, 173].

**A. Medical History**

1

Plaintiff has numerous medical records documenting complaints of back pain and symptoms related to COPD, but because the focus of Plaintiff's appeal relates to the ALJ's assessment of Plaintiff's mental impairments, the Court will only summarize Plaintiff's mental health history.

Plaintiff stated that she has been anxious all her life. [Tr. 435]. In September 2009, Plaintiff reported no desire to do anything and insomnia, but denied that she was bipolar or suicidal. [Tr. 242]. She was diagnosed with depression and anxiety and prescribed Depakote. *Id.* In April 2011, Plaintiff complained of being very emotional and having bad thoughts, but not thoughts of self-harm or harming others. [Tr. 393]. Plaintiff requested Cymbalta to help her sleep at night because she couldn't "turn off [her] head to get any sleep." *Id.* She was diagnosed with depressive disorder. *Id.* In June and September 2011, Plaintiff reported increased insomnia and feelings of anxiety, and was diagnosed with anxiety. [Tr. 397, 557].

In November 2011, Plaintiff began mental health treatment with Vera Vitt, APRN. Plaintiff reported nervousness, crying spells, negativity, insomnia, poor concentration and memory, loss of appetite, distractibility, hopelessness, racing thoughts, and fear of death. [Tr. 421]. Nurse Vitt observed that Plaintiff was on time for her appointment, had an unremarkable appearance, and was cooperative and oriented. Her affective reactions were generally flat, she had depressed mood with flat affect, and her thought processes were tangential and required some redirection and control. *Id.* Nurse Vitt diagnosed Plaintiff with bipolar disorder, dysthymic disorder, health-related stress, and anxiety and prescribed Ambien, Neurontin, Elavil, and Xanax. [Tr. 422]. At a later appointment in

November, Plaintiff reported that her medications were helping. In December 2011, she felt moody and Nurse Vitt adjusted her medications. Nurse Vitt observed that Plaintiff had a neat appearance, was pleasant, had a flat, blunted affect, and had circumstantial thought content. [Tr. 419].

In January 2012, Plaintiff was treated by Scott Gordon, M.S., a licensed psychologist. From January to September 2012, Mr. Gordon treated Plaintiff fourteen times. [Tr. 424-37]. Throughout this time, Plaintiff's primary documented complaints related to getting along with her parents – who she lived with – her daughter, and siblings. She did not feel they appreciated or needed her. *Id.* She also stated that her back pain made her irritable and anxious. During multiple sessions, Plaintiff reported difficulty sleeping [Tr. 426, 431, 437]. She also felt stressed and questioned why she was "still here."

In January 2012, Plaintiff requested an emergency appointment with Mr. Gordon. She was having a panic attack. [Tr. 436]. Dr. Gordon wrote that Plaintiff had "some irrational depressive thoughts and anxiety regarding not feeling needed." *Id.* In January 2012, during an appointment with Nurse Vitt, Plaintiff reported difficulty with her parents and that she was babysitting two small children. She stated that she felt irritable and anxious. [Tr. 18]. Nurse Vitt observed that Plaintiff was neatly dressed, pleasant, had a flat and blunted affect and circumstantial thought content. *Id.* In April 2012, Plaintiff babysat her grandchildren, but said the situation was stressful. [Tr. 433]. In May 2012, Mr. Gordon noted that Plaintiff "very depressed asked, 'Why am I here?'" [Tr. 432]. Nurse Vitt noted that she was disheveled and disorganized, had a flat affect,

3

and circumstantial thought. [Tr. 417]. In June 2012, Plaintiff reported to Mr. Gordon that she continued to have problems with her family and tension with her boyfriend. [Tr. 431]. In July 2012, Plaintiff reported feeling anxious because her mother was in the hospital with heart complications and feeling "smothered, trapped" because her parents required her to do too many chores. [Tr. 428-29]. Nurse Vitt observed that Plaintiff was positive and happy, had a neat appearance, appropriate affect, and circumstantial thought content. [Tr. 416]. In August 2012, Plaintiff told Mr. Gordon that she joined the YMCA. [Tr. 426]. She reported problems with her friend and with her sister. *Id.* She broke up with her boyfriend. [Tr. 425]. In September 2012, Plaintiff told Nurse Vitt that she was "not doing well" because she was upset with her mother. She was babysitting the neighbor's children and exercising at the YMCA. [Tr. 415]. She reported sleeping well. Nurse Vitt observed that Plaintiff had good communication and eye contact, was neatly dressed, pleasant, had an appropriate affect, had logical and coherent thought content, good energy, and a stable mental status. *Id.*

On November 7, 2012, Mr. Gordon completed a Medical Source Statement-Mental. Mr. Gordon opined that Plaintiff was not significantly limited in four areas, moderately limited in six areas, markedly limited in eight areas, and extremely limited in one area. [Tr. 439-40]. On November 9, 2012, Nurse Vitt completed a Medical Source Statement-Mental. Nurse Vitt opined that Plaintiff was not significantly limited in any areas of mental functioning except the ability to travel in unfamiliar places or use public transportations, for which she was moderately limited. [Tr. 496-97]. Nurse Vitt stated

4

that Plaintiff "is able to do general work. Job training should be necessary. Mood and depression . . . controlled by medication." [Tr. 497].

### B. ALJ's Decision

After a hearing, the Administrative Law Judge (ALJ) found that Plaintiff suffered from the following severe impairments: degenerative disc disease of the lumbar spine, non-displaced fracture humeral head right shoulder, COPD, obesity, bipolar disorder, dysthymic disorder, and anxiety. [Tr. 13]. The ALJ determined Plaintiff had the residual functional capacity (RFC) to perform light work. She can lift and carry twenty pounds occasionally and ten pounds frequently. She can stand, walk and sit for six hours in an eight-hour workday if she is allowed to change positions at will every thirty minutes. She cannot climb ladders, ropes, or scaffolds. She can occasionally stoop, kneel, crouch, crawl, and push and pull with her right arm. She should avoid dusts, fumes, odors, and gases. She is capable of simple, routine, repetitive, unskilled work tasks with occasional contact with the public, coworkers, and supervisors. [Tr. 15].

In making this conclusion, the ALJ gave "great weight" to the opinion of Nurse Vitt because it was consistent with the evidence of the record. [Tr. 21]. The ALJ gave Mr. Gordon's opinion "some weight" because he was not an "acceptable medical source" and because his opinion was not supported by the medical record.

The ALJ also determined that Plaintiff's allegations related to her mental symptoms were not fully credible. [Tr. 20]. The ALJ remarked that Plaintiff was never hospitalized for mental impairments, her symptoms improved with medication, and her treatment history was sparse. [Tr. 18, 20]. Plaintiff did not report suicidal or homicidal
5

ideations, was prescribed conservative prescription medication, and acknowledged improvement. She enjoyed exercising at the YMCA. [Tr. 20]. The ALJ also remarked that Plaintiff engaged in a somewhat normal level of daily activities and interaction. She could care for herself, feed her dog, prepare her own meals, do chores for her family, go out in public on a daily basis, drive, shop, work in the garden, quilt, read, watch television, play video games, handle a savings account, and count change. [Tr. 14-15].

## II. Discussion

Plaintiff alleges two points of error related to the Commissioner's determination that Plaintiff was not disabled. Plaintiff argues the ALJ did not properly weigh the opinions of Mr. Gordon and Nurse Vitt and did not properly account for her own description of her limitations.

### A. Weight Given to Mr. Gordon and Nurse Vitt

Remand is necessary because the ALJ erroneously applied the wrong legal standard to Mr. Gordon's opinion and subsequently provided greater weight to an opinion of an "other medical source" without sufficient explanation or consideration of the factors in 20 C.F.R. § 404.1927(c)(2).

The ALJ afforded Mr. Gordon's opinion "some weight" because he was not an "acceptable medical source" and because his opinions were not supported by his treatment notes. A licensed psychologist is an "acceptable medical source." 20 C.F.R. § 404.1513(a)(2). The Commissioner concedes that Mr. Gordon, a licensed psychologist, is an "acceptable medical source" and that the ALJ erred by concluding that Mr. Gordon was an "unacceptable medical source." [Doc. 11, p. 10].

6

Nonetheless, the Commissioner argues this error was harmless because "the ALJ would not have weighed Mr. Gordon's opinion differently even if she had recognized that Mr. Gordon was a licensed psychologist." *Id.* The Commissioner contends that it is clear from the ALJ's opinion that even if the ALJ had recognized Mr. Gordon was an "acceptable medical source," the ALJ would have concluded that Mr. Gordon's opinion was not due "controlling weight" under SSR 96-2P because it was unsupported by the medical records. The Commissioner argues that since the ALJ would not have given Mr. Gordon's opinion "controlling weight," the opinion would be evaluated using the factors in 20 C.F.R. § 404.1527(c)(2), which are used regardless of whether the opinion is from an "acceptable medical source" or an "unacceptable medical source."

To be entitled to "controlling weight," a medical opinion must come from a "treating source," and a "treating source" must be an "acceptable medical source." 20 C.F.R. § 404.1502; SSR 96-2; SSR 06-03P. "A treating physician's opinion is given 'controlling weight' if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005); SSR 96-2P. An ALJ may disregard or discount a treating physician's opinion where other medical assessments are supported by better or more thorough medical evidence or where the treating physician renders inconsistent opinions. *Goff*, 421 F.3d at 790.

The Commissioner argues that the ALJ's finding that portions of Mr. Gordon's opinion were inconsistent with the medical evidence in the record preclude the opinion from receiving "controlling weight." Even assuming the ALJ conducted a "controlling

7

weight" analysis, the ALJ's reasons for why Mr. Gordon's opinion is not due "controlling weight" are unsupported by substantial evidence. The ALJ stated that Mr. Gordon's opinion "is unsupported by the medical record, including the claimant's treatment notes, which indicate no allegations pertaining to many of these opined limitations." [Tr. 21]. However, other than this statement, the ALJ does not identify any specific inconsistencies and provides no examples from the record to support her conclusion. In another part of her opinion, the ALJ notes that Plaintiff was not hospitalized for psychiatric treatment and had no suicidal or homicidal ideations. [Tr. 20]. However, the Eighth Circuit has held that a person does not have to be bedridden or completely helpless to be found disabled, *Reed v. Barnhart*, 399 F.3d 917, 923 (8th Cir. 2005), and surely a claimant suffering from mental impairments need not prove he or she is homicidal or suicidal to still have disabling mental health impairments.

The ALJ also remarked that Plaintiff was prescribed "routine conservative prescription medication" but cites to no medical opinion concluding that Plaintiff's medication regimen was "routine" or "conservative." [Tr. 20]. The ALJ also states that Plaintiff's treatment was sparse, but does not explain what would constitute substantial treatment. On the contrary, the record reveals that Plaintiff saw Mr. Gordon fourteen times between January 2012 and September 2012 and saw Nurse Vitt six times between November 2011 and September 2012. The Commissioner also argues that alleged disability beginning June 1, 2010, but that Plaintiff did not see Mr. Gordon until November 2011. However, closer inspection of the medical records reveals that Plaintiff

8

was seeing Mr. Gordon for a year prior to when she first started treatment with Nurse Vitt in November 2010. [Tr. 421].

Though the ALJ did not give specific reasons for the weight she gave Mr. Gordon's opinion, the Commissioner attempted to provide those reasons in her brief. However, even assuming that an after-the-fact analysis was appropriate, the reasons provided by the Commissioner are not supported by substantial evidence. For instance, the Commissioner points out that Mr. Gordon's notes contain no allegations that Plaintiff has difficulty paying attention or concentrating such that she could not understand or remember simple instructions. However, Mr. Gordon's notes show that Plaintiff took the wrong medication and admitted to getting confused about her pills. [Tr. 434, 437]. The Commissioner further argues that Mr. Gordon's opinion is inconsistent with Nurse Vitt's objective observations. While it is true that Nurse Vitt often described Plaintiff as neatly dressed and pleasant, she also documented complaints of anxiety and stress and observed circumstantial thought content.

Further, even giving the ALJ the benefit of the doubt that Mr. Gordon's opinion is not due "controlling weight," there is no indication from the ALJ's opinion that she appropriately weighed Mr. Gordon's opinion using the factors found in 20 C.F.R. § 404.1527(c)(2). If the ALJ determines an opinion from an "acceptable medical source" is not entitled to controlling weight, the ALJ must still weigh the opinion in light of the factors found in 20 C.F.R. § 404.1527(c)(2). These factors include the length of the treatment relationship and the frequency of the examination, the nature and extent of the

9

treatment relationship, the supportability of the medical opinion, the consistency of the opinion, and other factors brought to the ALJ's attention. 20 C.F.R. § 1527(c)(2).

As discussed above, the ALJ did not specifically explain why Mr. Gordon's opinion was not supported or was otherwise inconsistent with the record. There is also no mention of the treatment relationship between Mr. Gordon and Plaintiff. For example, the records show that in nine months, Mr. Gordon treated Plaintiff fourteen times. [Tr. 424-37]. Each of these visits lasted approximately one hour. There is also evidence that Plaintiff was treated by Mr. Gordon for a year prior to what is documented by treatment notes. [Tr. 421].

In contrast to Mr. Gordon, who was afforded "some weight," the ALJ gave "great weight" to Nurse Vitt, who, as a nurse practitioner, is an "unacceptable medical source." SSR 06-03P; 20 C.F.R. § 1513. The Social Security Administration has stated that:

> The fact that a medical opinion is from an "acceptable medical source" is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an "acceptable medical source" because . . . "acceptable medical sources" are the most qualified health care professionals. However, depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an "acceptable medical source" may outweigh the opinion of an "acceptable medical source," including the medical opinion of a treating source.

SSR 06-03P. It may be appropriate to give more weight to the opinion of a medical source who is not an "acceptable medical source" if she has seen the claimant more often or if she has provided a better explanation for her opinion. *Id.* Nurse Vitt's opinion was given "great weight" because it was "consistent with the evidence of record." [Tr. 21]. The ALJ did not discuss how Nurse Vitt's opinion was consistent with

10

the record.  Nor did the ALJ discuss why Nurse Vitt, who saw Plaintiff six times for approximately thirty minutes, was entitled to more weight than Mr. Gordon, who saw Plaintiff fourteen times in the same time period and for a year prior to that for approximately one hour.  Further, Nurse Vitt's Medical Source Statement-Mental only contains a conclusion at the bottom of the checkbox form that says Plaintiff is "able to do general work" with job training because her medications controlled her mood and depression. [Tr. 497].  Mr. Gordon's Medical Source Statement-Mental contains specific explanations next to some of the limitations he opined. [Tr. 439-40].

Remand is necessary so that the ALJ can classify Mr. Gordon as an "acceptable medical source" and determine whether Mr. Gordon's opinion is due "controlling weight."  In making this determination under SSR 96-2P, the ALJ should provide specific reasons why Mr. Gordon's opinion is due or not due "controlling weight."  If Mr. Gordon's opinion is not due "controlling weight," the ALJ must determine what weight the opinion is due by specifically using the factors found in 20 C.F.R. § 1927(c)(2).  If the ALJ gives Mr. Gordon's opinion less weight than Nurse Vitt's opinion, the ALJ must state why Nurse Vitt's opinion is due more weight consistent with SSR 06-03P.  After weighing Mr. Gordon's and Nurse Vitt's opinions and providing specific reasons for the weights given, the ALJ shall determine a new RFC if it is necessary to include further limitations based on Plaintiff's mental impairments.

## B. Evaluation of Plaintiff's Credibility

Plaintiff also alleges the ALJ's credibility determination is not supported by substantial evidence because the ALJ relied too heavily on Plaintiff's activities of daily

11

living and on her treatment history. As the claimant's credibility "is primarily for the ALJ to decide, not the courts," *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003), the Court will generally defer to the ALJ's credibility finding if the "ALJ explicitly discredits the claimant's testimony and gives good reason for doing so." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

As to the ALJ's analysis of Plaintiff's activities of daily living, it is supported by substantial evidence. Plaintiff could care for herself, feed her dog, prepare her own meals, do chores for her family, go out in public, drive, shop, garden, quilt, read, watch television, play video games, handle a savings account, and count change. However, Plaintiff's activities of daily living, alone, are not substantial evidence that Plaintiff's allegations are not credible.

In evaluating a claimant's subjective complaints, in addition to the objective medical evidence, the ALJ must consider (1) the claimant's daily activities; (2) the duration, frequency and intensity of pain; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); *Eichelberger*, 390 F.3d at 590. While the ALJ is not required to explicitly discuss each *Polaski* factor, the ALJ must "acknowledge and consider those factors before discounting a claimant's subjective complaints." *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

In addition to relying on Plaintiff's activities of daily living to determine Plaintiff was not credible, the ALJ also remarked that Plaintiff had sparse mental health treatment, was never hospitalized for mental impairments, and never had suicidal or homicidal

12

ideations. [Tr. 18, 20]. However, as discussed throughout this opinion, the ALJ does not explain how the evidence supports a finding that Plaintiff received sparse treatment. She saw Mr. Gordon fourteen times in a nine month period and for a year prior to that. She saw Nurse Vitt six times for medication adjustments and refills. She also received counseling from a case worker sixteen times between April 2012 and November 2012. [Tr. 608-24]. The ALJ also remarked that Plaintiff did not have suicidal or homicidal ideations, but neither the ALJ nor the Commissioner points to any source requiring such severe progression of a mental illness. Further, on at least two occasions, Plaintiff expressed to Mr. Gordon that she did not know why she was "still here." [Tr. 432, 436]. The ALJ also remarked that Plaintiff was "prescribed routine conservative prescription medication," but does not explain why she considered it to be "routine" or "conservative." [Tr. 20]. In September 2012, Plaintiff was taking several medications used to treat mental health impairments including Ambien, Pristiq, Lamictal, Elavil, Klonopin, and Abilify. [Tr. 415]. Plaintiff previously took Cymbalta and Xanax.

On remand, in addition to weighing Mr. Gordon's and Nurse Vitt's medical opinions, the ALJ shall conduct a credibility analysis consistent with *Polaski* and supported by substantial evidence.

### III. Conclusion

The ALJ's decision is not supported by substantial evidence. Therefore, the Commissioner's decision is reversed, and the case is remanded for further consideration consistent with this Order.

s/ Nanette K. Laughrey
                                                        NANETTE K. LAUGHREY
                                                        United States District Judge

Dated:  December 17, 2014
Jefferson City, Missouri